******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE PROBATE APPEAL OF
## MARQUEA MURRELL
### (AC 47876)

Clark, Westbrook and Flynn, Js.

*Syllabus*

The plaintiff appealed from the Superior Court's judgment denying her appeal from decrees of the Probate Court granting the defendant's motion to remove the plaintiff as the fiduciary of the estate of their father, M, denying the plaintiff's petition to administer M's estate, and granting the defendant's petition to administer the estate. The plaintiff claimed that the Superior Court improperly concluded that the defendant was M's biological son because the defendant had failed to satisfy the legal requirements set forth in the Connecticut Parentage Act (§ 46b-450 et seq.). *Held*:

The Superior Court properly upheld the decrees issued by the Probate Court, as the Superior Court's conclusion that the defendant was M's biological son was legally sound and supported by the record, in that a child support judgment rendered by a family support magistrate in 1994 against M concerning the support of the defendant and subsequent child support related judgments demonstrated that M's paternity had been adjudicated by a court of competent jurisdiction prior to the January 1, 2022 effective date of the Connecticut Parentage Act, the 1994 judgment was presumptively valid as a final judgment and the plaintiff did not sustain her burden of overcoming that presumption, and, therefore, according to the plain language of the statute (§ 46b-553), the legal requirements set forth in the Connecticut Parentage Act did not apply.

Argued December 8, 2025—officially released July 7, 2026

*Procedural History*

Appeal from two decrees of the Probate Court for the district of Greater Windsor, inter alia, granting the defendant's motion to remove the plaintiff as the fiduciary of the estate of Mark Murrell, denying the plaintiff's petition to administer the estate, and approving the defendant's petition to administer the estate, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Gordon*, *J.*; judgment denying the appeal, from which the plaintiff appealed to this court. *Affirmed*.

*Keith Yagaloff*, for the appellant (plaintiff).

*Robert K. Killian, Jr.*, for the appellee (defendant).

*Opinion*

FLYNN, J. In this appeal, we are called upon to review whether the record before us suffices to justify the Superior Court's conclusion that Jemar Smith is the biological son of the decedent, Mark Murrell.[1] This is the appeal of Mark Murrell's daughter, Marquea Murrell, arising from the judgment of the Superior Court denying her appeal from two decrees of the Probate Court for the district of Greater Windsor regarding the administration of the estate of her father, Mark Murrell. On appeal, Marquea Murrell claims that the Superior Court improperly concluded that Jemar Smith is the biological son of her father, the decedent, Mark Murrell, because Jemar Smith failed to satisfy the legal requirements set forth in the Connecticut Parentage Act, General Statutes § 46b-450 et seq.

For reasons that follow, we conclude, in the exercise of our plenary review of the relevant statutes and judgments and the record presented, that a child support judgment by a family support magistrate, Ina Forman, rendered in 1994 against Mark Murrell, concerning the support of Jemar Smith, and subsequent child support related judgments demonstrate that Mark Murrell's paternity had already been adjudicated by a court of competent jurisdiction prior to the January 1, 2022 effective date of the Connecticut Parentage Act. Implicit in these judgments was a finding that Mark Murrell was Jemar Smith's father, as only a parent can be ordered by law to support his or her child. As a result, we conclude that, pursuant to the plain language of General Statutes § 46b-553, the other legal requirements set forth in the Connecticut Parentage Act, General Statutes § 46b-450 et seq., for determining parentage, do not apply to the present case.[2] Accordingly, we affirm the judgment of the Superior Court.

[1]For ease of reference, we refer to Jemar Smith; Mark Murrell; Marquea Murrell; and Jemar Smith's mother, Rochelle Smith Jones, by their full names throughout this opinion.

[2]We therefore do not decide, because it is unnecessary to our decision, but leave to another day, the broader question raised by Marquea Murrell

The following facts, as found by the Superior Court or as are undisputed in the record, and procedural history are relevant to this appeal. Mark Murrell died on May 7, 2023. On May 22, 2023, Marquea Murrell filed a petition for administration of his estate. Thereafter, upon application by Marquea Murrell, the Probate Court, *Deneen, J.*, issued an ex parte order appointing Marquea Murrell as the administrator of Mark Murrell's estate.

Jemar Smith subsequently filed a motion, dated June 7, 2023, in which he requested that the court revoke its appointment of Marquea Murrell as the administrator of Mark Murrell's estate because Marquea Murrell, inter alia, failed to disclose that he is a biological son, and therefore an heir, of Mark Murrell.[3] Jemar Smith further requested that the court replace Marquea Murrell with an independent third-party administrator. On that same date, Jemar Smith also filed a petition for the administration of Mark Murrell's estate.

Following a hearing on June 19, 2023, the Probate Court issued a decree on June 22, 2023, in which it removed Marquea Murrell as the administrator of Mark Murrell's estate and appointed Attorney Peter M. Berry as the temporary administrator. The Probate Court recognized that it had authority to reconsider its initial order pursuant to General Statutes (Rev. to 2023) § 45a-128 (a), which provides in relevant part that "any order or decree made by a court of probate ex parte may, in the discretion of the court, be reconsidered and modified or revoked by the court. Reconsideration may be made on the court's own motion or, for cause shown satisfactory to the court, on the written application of any interested person. . . ." The Probate Court concluded that Jemar Smith presented sufficient evidence that he

as to whether the Connecticut Parentage Act now eliminates resort to the consideration of common-law proof and procedures.

[3] Jemar Smith filed this motion jointly with Cynthia Earven, the mother and guardian of Cymarie Earven, also an alleged child of Mark Murrell. The Probate Court subsequently found that insufficient evidence was presented to demonstrate that Cymarie Earven is an heir of Mark Murrell. That conclusion is not at issue in this appeal.

is the biological son of Mark Murrell and explained that, "[d]ue to [Marquea Murrell's] failure to list and notify additional heirs on her initial petition to this court, and based on the strained relationship between the parties, the court finds that it is necessary to appoint a third-party fiduciary to administer this estate." In addition, the Probate Court stated that it would hold a hearing on the parties' petitions for administration of Mark Murrell's estate "in due course."

Following a hearing on July 11, 2023, the Probate Court issued a second decree on July 17, 2023, in which it approved Jemar Smith's petition for the administration of the estate. The Probate Court appointed Attorney Berry as the "full administrator" of Mark Murrell's estate and ordered him to, inter alia, settle the estate within one year. The Probate Court also dismissed Marquea Murrell's petition with prejudice.

On July 21, 2023, Marquea Murrell commenced an appeal in the Superior Court. She appealed from both the June 22, 2023 decree and the July 17, 2023 decree, claiming, inter alia, that the Probate Court "[relied] on an erroneous determination that Jemar Smith was [Mark Murrell's] child" when it revoked her appointment as the administrator of the estate and dismissed her petition for administration of the estate. Specifically, she argued, in relevant part, that the Probate Court did not apply the correct legal standard in determining that Jemar Smith was Mark Murrell's child.

The Superior Court, *Gordon, J.*, held a full evidentiary hearing on April 23, 2024, at which both parties were represented by counsel. The court heard testimony from Marquea Murrell; Jemar Smith; Rochelle Smith Jones, Jemar Smith's mother; and Natalia Smith Vargas, Jemar Smith's daughter. The parties also submitted documentary evidence, including a defective acknowledgment of paternity signed by Mark Murrell in July 1993;[4] a copy of a claim filed on May 10, 2023, with the Department

[4]As explained subsequently in this opinion, it is undisputed that the acknowledgment of paternity signed by Mark Murrell in July 1993 is

of Veterans Affairs (VA form) related to Mark Murrell's funeral benefits, which had been filled out together by the parties and listed Marquea Murrell as Mark Murrell's daughter and Jemar Smith as Mark Murrell's son; and a certified copy of a Superior Court file, which included, inter alia, a petition for child support filed by Rochelle Smith Jones in 1993, when Jemar Smith was age sixteen,[5] seeking support from Mark Murrell as Jemar Smith's father, a judgment granting Rochelle Smith Jones' petition and issuing a child support judgment in 1994 against Mark Murrell by a Superior Court family support magistrate, and a wage withholding judgment of support issued by the Support Enforcement Division of the Superior Court against Mark Murrell on August 23, 1999.

On May 8, 2024, the Superior Court issued a memorandum of decision affirming the decrees of the Probate Court. What was before the Probate Court and, thus, the Superior Court on appeal sitting as a Probate Court, was the issue of whether the Probate Court properly (1) revoked the appointment of Marquea Murrell as administrator of Mark Murrell's estate, in its first decree, and appointed a temporary independent administrator, and (2) issued a subsequent decree appointing the temporary independent administrator, Attorney Berry, as the permanent administrator of the estate. Both the Probate Court and the Superior Court on the appeal from probate reached the central issue, which Marquea Murrell had raised and briefed, of whether Jemar Smith was a biological son of Mark Murrell, underlying both the Probate Court's decrees and the Superior Court's judgment.

defective insofar as he listed his own name on the line designated for the information about the child, and he did not list Jemar Smith's name.

[5] As explained subsequently in this opinion; see footnote 15 of this opinion; Rochelle Smith Jones provided testimony, which the court found credible, that Mark Murrell enlisted in the United States Navy when he learned that she was pregnant. The delay in her filing the petition for child support was caused by Mark Murrell's whereabouts being unknown until she later learned that he had returned to Connecticut.

The Superior Court explained that both parties had acknowledged that the Probate Court had statutory authority to determine parentage pursuant to General Statutes § 46b-454 (a) (2), which provides in relevant part: "(a) Petitions to adjudicate parentage shall be filed in the Family Division of the Superior Court, except that . . . (2) petitions to determine parentage after the death of the child or the person whose parentage is to be determined shall be filed in the Probate Court . . . ." See also General Statutes (Rev. to 2023) § 46b-571 (h) ("after the death of the alleged genetic parent of a child born to an unmarried birth parent, a party deemed by the court to have a sufficient interest may file a claim for parentage on behalf of such alleged genetic parent with the Probate Court for the district in which either the alleged genetic parent resided or the party filing the claim resides").

In summarizing the evidence that had been presented at the hearing, the court found credible Rochelle Smith Jones' testimony that she was impregnated by Mark Murrell when she was sixteen years old, that it was not consensual on her part, and that she did not have sexual intercourse with any other person for several years. In addition, the court found not credible Marquea Murrell's testimony that the VA form applying for veterans' burial benefits and several other documents had been "'forged'" and, instead, credited Jemar Smith's testimony that the VA form accurately reflects what Marquea Murrell and Jemar Smith voluntarily submitted jointly, which indicated that he was the son of Mark Murrell.[6]

The court explained that the parties disagreed regarding the criteria that could be considered in making a parentage determination. Marquea Murrell's position

---

[6]Marquea Murrell and Jemar Smith had provided additional conflicting testimony throughout the hearing. For instance, they disagreed as to when they first met; whether Marquea Murrell previously acknowledged that she was Jemar Smith's sister and the aunt of his daughters; whether Jemar Smith had attended certain family functions; and regarding the extent to which Jemar Smith was involved in medical decisions concerning Mark Murrell at the hospital immediately prior to his death.

was that the only appropriate criteria for the court to consider is set forth in the "presumption of parentage" statute, General Statutes § 46b-488 (a) (3), which is part of the Connecticut Parentage Act. Section 46b-488 provides in relevant part that "(a) . . . a person is presumed to be a parent of a child if . . . (3) The person, jointly with another parent, resided in the same household with the child and openly held out the child as the person's own child from the time the child was born or adopted and for a period of at least two years thereafter, including any period of temporary absence. (b) The parentage of a presumed parent under subdivision (3) of subsection (a) of this section shall be established by a court adjudication or signing of a valid acknowledgment of parentage under sections 46b-476 to 46b-487, inclusive." The portion of that statute that is applicable to our analysis refers to establishment of parentage by "a court adjudication . . . ." General Statutes § 46b-488 (b).

Marquea Murrell argued that Jemar Smith could not satisfy the criteria of § 46b-488 (a) (3) because Mark Murrell did not jointly, with another parent, reside in the same household with Jemar Smith; the acknowledgment of paternity signed by Mark Murrell was invalid insofar as it failed to identify Jemar Smith as Mark Murrell's child and instead identified Mark Murrell as both the father and the child; and there was no court adjudication that Mark Murrell was Jemar Smith's father. Jemar Smith, on the other hand, argued that the court could take "a wider variety of factors into consideration when making a parentage determination," including the testimony from Rochelle Smith Jones regarding the circumstances surrounding her impregnation and the VA form identifying Jemar Smith as Mark Murrell's son. More significantly, Jemar Smith also argued that the child support judgments rendered by the family support magistrates reflected that there had been a court adjudication of parentage, satisfying the requirements of the Connecticut Parentage Act.

The court concluded that "[Marquea Murrell's] view of the Probate Court's authority is too narrow, and . . .

although a rebuttable presumption of parentage may be created by satisfying one or more of the criteria set forth in [§] 46b-488 (a) (3), the court may also take other factors into consideration."[7] However, the court also significantly concluded that, "even if all other evidence [was] disregarded, the August 23, 1999 withholding order for support identifying [Mark Murrell] as the 'obligor' vis-à-vis [Jemar Smith] is sufficient to create a rebuttable presumption of parentage pursuant to [§ 46b-488], which presumption [Marquea Murrell] failed to overcome or rebut." Accordingly, the court denied Marquea Murrell's appeal. Marquea Murrell subsequently filed a motion for reargument and reconsideration, which the court summarily denied. This appeal followed.

We begin with the standard of review. "An appeal from a Probate Court to the Superior Court is not an ordinary civil action. . . . When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. . . . In ruling on a probate appeal, the Superior Court exercises the powers, not of a constitutional court of general or [common-law] jurisdiction, but of a Probate Court." (Internal quotation marks omitted.) *Salce* v. *Cardello*, 348 Conn. 90, 103, 301 A.3d 1031 (2023).

When, as in the present case, no record was made of the probate proceedings,[8] "a probate appeal is not so much

[7]The court concluded, on the basis of "the totality of the evidence presented," that "there was a sufficient basis for the Probate Court to conclude that [Jemar Smith] is [Mark Murrell's] biological son . . . ." The court explained: "Having carefully considered [Marquea Murrell's] appeal, including all documentary evidence submitted in support of the appeal; and having carefully considered [Jemar Smith's] answer, together with all of the documentary evidence introduced into evidence, including the testimony of [Rochelle Smith] Jones and the withholding order; and having conducted a full day proceeding at which both parties had a full opportunity to present their respective positions; the court concludes that there was and is sufficient evidence to conclude that [Mark Murrell] is [Jemar Smith's] biological father."

[8]In the present case, the parties did not provide this court or the Superior Court with any transcripts of the proceedings before the Probate Court. See *O'Sullivan* v. *Haught*, 348 Conn. 625, 638, 309 A.3d 1194 (2024) ("[u]nder [General Statutes] § 45a-186, if a record,

an appeal as a trial de novo . . . . The Superior Court sits as a probate court and takes jurisdiction of the order or decree appealed from and [tries] that issue de novo." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Rutherford* v. *Slagle*, 352 Conn. 27, 34–35, 334 A.3d 988 (2025); see also *Stroll* v. *Pass*, 236 Conn. App. 357, 364, 348 A.3d 843 (2025), cert. denied sub nom. *In re Probate Appeal of Stroll*, 354 Conn. 906, 349 A.3d 297 (2026).

"In appeals in which the trial court has ruled on a probate appeal de novo, we treat our scope of review as we would with any other Superior Court proceeding." (Internal quotation marks omitted.) *Salce* v. *Cardello*, 210 Conn. App. 66, 72, 269 A.3d 889 (2022), aff'd, 348 Conn. 90, 301 A.3d 1031 (2023). Because the questions raised in the present case involve the interpretation and application of certain statutes, our review is plenary. See, e.*g*., *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 594, 181 A.3d 550 (2018) (application of statute involves question of law over which review is plenary). "[T]he legislature is always presumed to have created a harmonious and consistent body of law . . . and we must construe legislation found in separate statutes harmoniously whenever possible." (Citation omitted; internal quotation marks omitted.) *Clue* v. *Commissioner of Correction*, 353 Conn. 97, 111–12, 340 A.3d 1102 (2025). Moreover, "[t]he construction of . . . [a] judgment is a question of law for the court [and] . . . our review . . . is plenary." (Internal quotation marks omitted.) *Perry* v. *Perry*, 130 Conn. App. 720, 724, 24 A.3d 1269 (2011); see also *Fredo* v. *Fredo*, 234 Conn. App. 106, 121, 343 A.3d 525 (2025).

Prior to addressing Marquea Murrell's claim in the present case, we also provide an overview of the legal

*including a transcript*, of the testimony was made before the Probate Court pursuant to [General Statutes] §§ 51-72 and 51-73, the Superior Court shall review the decree of the Probate Court using an abuse of discretion standard" (emphasis added; footnotes omitted; internal quotation marks omitted)). At the start of the April 23, 2024 hearing, the Superior Court indicated that it would proceed with a de novo review of the Probate Court's decrees, and neither party expressed any objection.

principles governing the distribution of an intestate estate, which are applicable when a decedent dies without a will, and a determination of parentage in conjunction therewith. When a person dies intestate, probate courts are, inter alia, required to determine who constitutes the decedent's heirs at law and are, therefore, entitled to notice of proceedings; and further, to determine who has entitlement to aliquot shares of the estate upon its settlement under an order of distribution to the fiduciary. See General Statutes § 45a-303 (a); see also General Statutes § 45a-433 et seq.

The distribution of an intestate estate to the children of a decedent is governed by General Statutes § 45a-438. In 1978, our elected members of the General Assembly amended General Statutes (Rev. to 1977) § 45-274—now codified as § 45a-438—by enacting Public Acts 1978, No. 78-199, which determined that, under our law, as a matter of public policy, all children, whatever the circumstances of their conception, or their parents' marital status at that time or the time of their birth, had the right to inherit from a parent under the law of intestacy. Specifically, No. 78-199 of the 1978 Public Acts, which was codified at General Statutes (Rev. to 1979) § 45-274 (b) (2), provides in relevant part that "[a] child born out of wedlock shall inherit from (A) his or her mother and (B) his or her father, provided such father (i) has been adjudicated the father of such child by a court of competent jurisdiction, or (ii) has acknowledged under oath in writing to be the father of such child." Section 45-274 was transferred to § 45a-438 in 1991.[9]

Section 45a-438 now provides in relevant part that "(b) . . . for the purposes of this chapter, a child and the child's legal representatives shall qualify for inheritance from or through the parent if parentage is established in accordance with the provisions of the Connecticut

___

[9] Section 103 of No. 21-15 of the 2021 Public Acts amended subsection (b) of § 45a-438 by deleting the language regarding a child being "born out of wedlock" and establishing a father's paternity and replacing it with the provision, set forth more fully in the body of this opinion, for establishing parentage in accordance with the Connecticut Parentage Act.

Parentage Act or by adoption. If parentage is based on subdivision (3) of subsection (a) of section 46b-488 or sections 46b-495 to 46b-505, inclusive, of the Connecticut Parentage Act, parentage shall be established by a voluntary acknowledgment of parentage under sections 46b-476 to 46b-487, inclusive, of the Connecticut Parentage Act, *or by court adjudication*." (Emphasis added.)

The Connecticut Parentage Act, which became effective on January 1, 2022; see Public Acts 2021, No. 21-15, §1; is modeled on the 2017 revision of the Uniform Parentage Act.[10] See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 2021 Sess., pp. 2402, 2517, 2546, 2572. The Connecticut Parentage Act includes several provisions that govern proceedings to adjudicate parentage. See General Statutes §§46b-458 through 46b-491.

Marquea Murrell's claim in the initial briefing of the present case centers around §46b-488 (a), which sets forth certain circumstances in which a presumption of parentage arises pursuant to the Connecticut Parentage Act. Marquea Murrell claimed, inter alia, that the Superior Court erred in concluding that Jemar Smith is Mark Murrell's biological son because he had not established that there had been a court adjudication of paternity pursuant to §46b-488 (a)(3) and none of the other prerequisites set forth in the Connecticut Parentage Act had been met.[11] In response, Jemar Smith argued in his

---

[10]The model law was approved by the Uniform Law Commission, also known as the National Conference of Commissioners on Uniform State Laws, which is comprised of "practicing lawyers, judges, legislators and legislative staff and law professors, who have been appointed by state governments . . . to research, draft and promote enactment of uniform state laws in areas of state law where uniformity is desirable and practical." National Conference of Commissioners on Uniform State Laws, Uniform Parentage Act (2017) (last modified January 25, 2024), p. 2, available at https://www.uniformlaws.org/viewdocument/final-act-96?CommunityKey=c4f37d2d-4d20-4be0-8256-22dd73af068f&tab=librarydocuments (last visited June 22, 2026).

[11]Marquea Murrell also contended that the Superior Court improperly took into account other evidence of the parent-child relationship between Jemar Smith and Mark Murrell, such as the defective acknowledgment of paternity and Rochelle Smith Jones' testimony, as the Connecticut Parentage Act sets forth the exclusive framework for determining

initial brief to this court that the Superior Court properly determined that Mark Murrell was his biological father because the family support magistrates' child support judgments demonstrate that there had been a court adjudication establishing paternity and, therefore, he established a presumption of paternity pursuant to § 46b-488, in accordance with the Connecticut Parentage Act.

After oral argument, this court, sua sponte, ordered the parties to submit supplemental memoranda "addressing the effect, if any, of the transitional provision of the Connecticut Parentage Act . . . § 46b-553, on the outcome of this appeal."[12] Section 46b-553 provides: "Sections 46b-450 to 46b-553,[13] inclusive, [the Connecticut Parentage Act] apply to a proceeding in which no judgment has entered before January 1, 2022, with respect to a person's parentage *that has not already been adjudicated by a court of competent jurisdiction* or determined by operation of law." (Emphasis added; footnote added.)

In her supplemental memorandum, Marquea Murrell maintains that the Connecticut Parentage Act governs in the present case, although § 46b-553 directs that the Connecticut Parentage Act does not apply to adjudications of parentage that took place prior to January 1,

---

parentage in probate matters and does not provide for the consideration of such evidence. Marquea Murrell cites several Superior Court cases in support of this proposition. See *Davis* v. *Burrill*, Superior Court, judicial district of Middlesex, Docket No. FA-22-5015463-S (February 6, 2023) (describing Connecticut Parentage Act as "comprehensive revision of our state statutes regarding parentage" that "creates a cohesive statutory framework"); see also *Portalatin* v. *Dorantes*, Superior Court, judicial district of New Britain, Docket No. FA-24-6083949-S (October 29, 2024) (describing Connecticut Parentage Act as "a comprehensive act designed to revise and modernize the statutes regarding the creation and maintenance of legal parent-child relationships" (internal quotation marks omitted)). Notably, the Connecticut Parentage Act has not yet been addressed by either this court or our Supreme Court.

[12]Neither Marquea Murrell nor Jemar Smith initially briefed the effect of § 46b-553—before the Probate Court for the district of Greater Windsor, or the Superior Court in the appeal from the Probate Court, or this court—until we ordered supplemental briefing on that provision.

[13]Sections 46b-450 to 46b-553 comprise the Connecticut Parentage Act in its entirety. See General Statutes § 46b-450.

2022. Marquea Murrell contends that "[n]o pre-2022 judgment adjudicated [Jemar] Smith to be [Mark] Murrell's child"; that legal parentage is different from biological parentage; that General Statutes § 46b-471 (10) recognizes adjudications made only in proceedings for dissolution, annulment or legal separation of marriage, pursuant to General Statutes § 46b-468 (b); that "[t]he Probate Court and the Superior Court made post-2022 parentage determinations," rather than enforcing prior adjudications; that the written acknowledgment of paternity signed by Mark Murrell was ineffectual to determine parentage; that a wage withholding judgment cannot be a statutory path to parentage; and that the Superior Court could not consider other evidence outside the ambit of the Connecticut Parentage Act.

In his supplemental memorandum, Jemar Smith initially states that § 46b-553 has no bearing on the issue presently before this court. In the remainder of his supplemental memorandum, however, Jemar Smith emphasizes the language in § 46b-553 stating that the provisions of the Connecticut Parentage Act "apply to a proceeding in which no judgment has entered before January 1, 2022 . . . ." (Emphasis omitted; internal quotation marks omitted.) He argues that, in the present case, there had already been a judgment of paternity by way of a family support magistrate's child support judgment rendered in 1994.

"In accordance with [General Statutes] § 1-2z, we begin our analysis with the plain language of the relevant statutes . . . ." *Stamford* v. *Commission on Human Rights & Opportunities, Office of Public Hearings*, 351 Conn. 298, 306, 330 A.3d 102 (2025); see also *Villages, LLC* v. *Longhi*, 166 Conn. App. 685, 703, 142 A.3d 1162, cert. denied, 323 Conn. 915, 149 A.3d 498 (2016).

Having carefully considered the points raised in the parties' supplemental memoranda, we conclude that, under the plain language of § 46b-553, the Connecticut Parentage Act does not apply to the present case because Mark Murrell's paternity had already been adjudicated

by a court of competent jurisdiction by way of a family support magistrate's child support judgment rendered on January 28, 1994, and subsequent child support related judgments. The judgments of the family support magistrates on which we rely were effective decades before the January 1, 2022 effective date of the Connecticut Parentage Act. By its express terms, the Connecticut Parentage Act does not apply to proceedings where such a judgment entered prior to January 1, 2022. General Statutes § 46b-553.

We firmly reject Marquea Murrell's contention that both the Probate Court for the district of Greater Windsor and the Superior Court on appeal from the Probate Court were entering judgments after January 1, 2022, and, therefore, the provisions of § 46b-553 do not apply to the present case. Under that reasoning, § 46b-553 could never be applied. Both courts have statutory authority to determine whether a judgment entered prior to January 1, 2022, constitutes an adjudication of parentage within the meaning of § 46b-553, thereby exempting the proceeding from the provisions of the Connecticut Parentage Act.

Our review of the record, including the certified copy of the Superior Court file from Rochelle Smith Jones' child support action marked as exhibit L, reflects evidence of the following. On August 18, 1993, when Jemar Smith was sixteen years old, his mother, Rochelle Smith Jones,[14] filed a child support petition against Mark Murrell.[15] On the petition, Rochelle Smith Jones listed Mark

---

[14]At the time of filing the petition for child support, the full name of Jemar Smith's mother was Rochelle Smith. As explained previously, for ease of reference, we refer in this opinion to Jemar Smith's mother as Rochelle Smith Jones, which was her full name at the time of the probate appeal in the present case.

[15]At the hearing before the Superior Court, Rochelle Smith Jones testified that there was a child support order in place prior to 1993, since around the time of Jemar Smith's birth. Specifically, she testified that Mark Murrell enlisted in the United States Navy upon learning that she was pregnant, and she received a child support order she had sought against Mark Murrell through the United States Navy after Jemar Smith was born. She explained that she did not pursue that child

Murrell as the "acknowledged parent" of Jemar Smith. An acknowledgment of paternity signed by Mark Murrell and an affirmation of paternity signed by Rochelle Smith Jones also were filed with the court on August 18, 1993.[16] In Rochelle Smith Jones' affirmation of paternity, which she had signed under oath, she listed Mark Murrell as Jemar Smith's father. Although Mark Murrell's acknowledgment of paternity was notarized by a commissioner of the Superior Court and lists Rochelle Smith Jones as the child's mother, he had listed his own name, and not Jemar Smith's name, on the line designated for information about the child—which, if taken literally, would have meant that Mark Murrell was acknowledging that he was his own father and that Rochelle Smith Jones was his mother. Mark Murrell's written acknowledgment was clearly defective. We hold, however, that the various judgments holding Mark Murrell responsible for payment of the support of Jemar Smith were by law presumptively valid judgments.

Mark Murrell was served process for the support action on December 28, 1993. A hearing was held on January 28, 1994, at which Rochelle Smith Jones was present,

support order because she did not know where Mark Murrell was living at that time, and she filed the new petition for child support in 1993, when she learned that he was back in Connecticut.

Although the Superior Court did not make any findings as to an earlier child support order, Jemar Smith's counsel argues, on appeal to this court, that there must have been an earlier hearing and an earlier child support judgment, prior to Rochelle Smith Jones' 1993 petition, because the court found an arrearage of $12,025 in its January 28, 1994 judgment. Jemar Smith's counsel contends that "[t]he records of the earlier court hearing were not found." In light of our conclusion based on the child support judgments that are in the record, we need not address this argument.

[16]General Statutes (Rev. to 1993) § 46b-172 (a) provides in relevant part: "In lieu of or in conclusion of proceedings under section 46b-160, the written acknowledgment of paternity executed by the putative father of the child when accompanied by an attested waiver of the right to a blood test, the right to a trial and the right to an attorney and a written affirmation of paternity executed and sworn to by the mother of the child and filed with the superior court, for the judicial district in which the mother of the child or the putative father resides shall have the same force and effect as a judgment of that court . . . ."

and Mark Murrell did not appear. Aside from Mark Murrell's acknowledgment of paternity and Rochelle Smith Jones' affirmation of paternity filed on the same date as Rochelle Smith Jones' child support petition, the record does not disclose what other evidence the family support magistrate may have heard. On that same January 28, 1994 date, the family support magistrate, Ina Forman, entered a default judgment against Mark Murrell—which Mark Murrell never appealed—finding that he owed an arrearage of $12,025. The court ordered Mark Murrell to pay $65 per week for current child support and $20 per week toward the arrearage. On August 23, 1999, the support enforcement division issued a wage withholding judgment of $20 per week based on the family support magistrate's January 28, 1994 judgment. The withholding judgment listed Mark Murrell as the "obligor" of child support.

On December 8, 2011, the state of Connecticut support enforcement services filed a motion for modification of past due support on behalf of Mark Murrell, seeking a decrease in his child support obligation. The support enforcement officer sought a modification on the basis of a substantial change in circumstances, due to the fact that the existing support judgment deviated from the child support guidelines by at least 15 percent. The support enforcement officer requested that the judgment for past due support be modified commensurate with Mark Murrell's ability to pay. A family support magistrate scheduled a hearing on the motion for March 16, 2012. A copy of the motion and the court's order for a hearing was served on Rochelle Smith Jones on February 8, 2012, and mailed to Mark Murrell on February 21, 2012.

Mark Murrell was present at the hearing on March 16, 2012, and filed an appearance in the matter on that date. The family support magistrate, Frederic Gilman, granted the motion for modification, finding that the arrearage was $13,354.96 as of March 13, 2012, and ordered Mark Murrell to pay $5 per week toward that arrearage. Mark Murrell subsequently made child support payments

totaling $6012.66, with the last payment taking place on April 25, 2023, a couple of weeks before his May 7, 2023 death.

We conclude, in the exercise of our plenary review, that the evidence of the antecedent family support magistrate's child support judgment rendered on January 28, 1994, and the subsequent child support related judgments—including the August 23, 1999 withholding judgment for support relied upon by the Superior Court[17] and the modification of the child support judgment rendered on March 16, 2012—were judgments sufficient to establish that there had been a court adjudication of parentage.

Marquea Murrell emphasizes her view that the child support judgments were entered by default and that there had not been a formal adjudication of paternity. She argues that "[c]hild support orders alone are not conclusive evidence of parentage." We are not persuaded. Although, as Marquea Murrell points out, the child support judgments do not expressly state that Mark Murrell was the father of Jemar Smith, we hold that it was implicit in the family support magistrate's child support judgment rendered on January 28, 1994. We do so because a person whose parentage is not legally established cannot be charged with supporting a child who is not his or her child. General Statutes § 46b-215, which governs a family support magistrate's authority to render child support judgments, limits the legal obligation of support to a person's spouse and children. Specifically, § 46b-215 provides in relevant part that "(a) (1) The Superior Court or a family support magistrate may make and enforce orders for payment of support against any person who neglects or refuses to furnish

---

[17] Although Marquea Murrell contends that the 1999 wage withholding judgment "is not a statutory pathway to parentage," we do not consider that wage withholding judgment standing alone but, rather, in the exercise of our plenary review, in conjunction with the family support magistrate's 1994 child support judgment and the other child support related judgments that followed, which were before the Superior Court as part of exhibit L.

necessary support to such person's spouse or a child under the age of eighteen or as otherwise provided in this subsection, according to such person's ability to furnish such support, notwithstanding the provisions of section 46b-37. If such child is unmarried and a full-time high school student, such support shall continue according to the parents' respective abilities, if such child is in need of support, until such child completes the twelfth grade or attains the age of nineteen, whichever occurs first.

* * *

"(4) For purposes of this section, the term 'child' shall include one born to parents [not] married to each other whose alleged genetic parent . . . has been adjudged the parent by a court of competent jurisdiction . . . ."[18] Thus,

[18]General Statutes (Rev. to 1993) § 46b-215 (a), which was in effect at the time of the family support magistrate's January 28, 1994 child support judgment, similarly provided in relevant part: "The superior court or a family support magistrate shall have authority to make and enforce orders for payment of support against any person who neglects or refuses to furnish necessary support to his or her spouse or a child under the age of eighteen, according to his or her ability to furnish such support, notwithstanding the provisions of section 46b-37. . . . For purposes of this section, the term 'child' shall include one born out of wedlock whose father has acknowledged in writing his paternity of such child or has been adjudged the father by a court of competent jurisdiction, or a child who was born before marriage whose parents afterwards intermarry. . . . Said court or family support magistrate shall also have authority to determine, order and enforce payment of any support due because of neglect or refusal to furnish support prior to the action. In the determination of support due based on neglect or refusal to furnish support prior to the action, the support due for periods of time prior to the action shall be based upon the obligor's ability to pay during such prior periods. . . ."

Notably, in the current revision of § 46b-215, there is a three year limitation on retroactive child support that a court may order in the case of a child born out of wedlock whose parents did not intermarry. See General Statutes § 46b-215 (a) (7) (A) ("The court or family support magistrate may also determine, order and enforce payment of any support due because of neglect or refusal to furnish support for periods prior to the action. *In the case of a child born out of wedlock whose parents have not intermarried, a parent's liability for such support shall be limited to the three years next preceding the filing of a petition or written agreement to support pursuant to this section.*" (Emphasis added.)). That particular limitation, however, was not in effect at the

a determination that Mark Murrell was Jemar Smith's father was a necessary prerequisite to the child support judgments.

We similarly are not persuaded by Marquea Murrell's arguments that the definitions set forth in the Connecticut Parentage Act "distinguish legal parentage from evidence suggesting biological parentage" and that, pursuant to §§ 46b-468 (b) and 46b-471 (10), the Connecticut Parentage Act recognizes the binding effect of an adjudication of parentage only if it was made in the context of a proceeding for a dissolution, annulment or legal separation of marriage. Regardless of whether Marquea Murrell's interpretation of these provisions is accurate, they are not applicable to the present case pursuant to § 46b-553.

In addition, it makes no difference that the family support magistrate's 1994 child support judgment was entered by default. "[A] defendant [in a child support action], by failing to appear and contest the allegations asserted in the support petition, judicially admitted those facts contained in the petition. Put differently, basic principles of fair notice to the served party and his concomitant obligation to respond to the pleading served on him apply within the context of family support magistrate proceedings. . . . Accordingly, the failure of a party to deny the material allegations contained in an adversary's pleading operates as an implied admission of that allegation. This admission may extend from an individual allegation, to a set of allegations, or, in the case of a defaulting party who wholly fails to deny any of the allegations asserted by an adverse party, to the entirety of the pleader's filing constituting a cause of action. A default in an action for legal and equitable relief admits the material facts constituting a cause of action." (Footnote omitted; internal quotation marks omitted.) *Commissioner of Social Services* v. *Smith*, 265 Conn. 723, 735–36, 830 A.2d 228 (2003).

time of the family support magistrate's January 28, 1994 child support judgment in the present case. See General Statutes (Rev. to 1993) § 46b-215 (a); see also Public Acts 2006, No. 06-149, § 16.

"Although the failure of a party to deny the material allegations of a pleading operates so as to impliedly admit the allegations, a default does not automatically trigger judgment for, or the relief requested by, the pleader. The pleader is entitled to an entry of judgment or a grant of relief as a function of the nonresponsive party's default and the attendant implied admission only when the allegations in the well pleaded filing are sufficient on their face to make out a claim for judgment or relief." Id., 736–37. In the present case, Mark Murrell was "identified by name, address and legal status as 'acknowledged [parent]'" in Rochelle Smith Jones' petition for child support and, therefore, "[t]he assertions contained in these documents not only gave proper notice to [him] as to the consequences of his failure to appear and defend, but also constituted a sufficient basis upon which an adjudication of paternity may be made and an order of child support may be entered." Id., 738.

Finally, our conclusion is not undermined by Marquea Murrell's emphasis on Mark Murrell's defective acknowledgment of paternity[19] and her attempt to collaterally attack the judgment of Family Support Magistrate Ina Forman in issuing the 1994 child support judgment, to which Marquea Murrell was not a party and from which Mark Murrell took no appeal. A collateral attack on a judgment occurs when a party seeks to avoid a final judgment in a separate proceeding from which no appeal was taken in order to avoid the effect of that judgment, which, in this case, was rendered more than thirty years ago. Such attacks are not favored because they run counter to the long-standing policy supporting finality of judgments. "[F]inal judgments are . . . presumptively valid . . . and collateral attacks on their validity are

---

[19]Contrary to Marquea Murrell's suggestion, the Superior Court did not conclude—and Jemar Smith does not argue—that Mark Murrell's defective acknowledgment of paternity established his paternity by operation of law. As explained throughout in this opinion, our conclusion rests not on the acknowledgment of paternity but, rather, on the adjudication of Mark Murrell's paternity implicit in the family support magistrate's 1994 child support judgment and the related judgments that followed.

disfavored. . . . The reason for the rule against collateral attack is well stated in these words: The law aims to invest judicial transactions with the utmost permanency consistent with justice. . . . Public policy requires that a term be put to litigation and that judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. . . . [T]he law has established appropriate proceedings to which a judgment party may always resort when he deems himself wronged by the court's decision. . . . Unless it is entirely invalid and that fact is disclosed by an inspection of the record itself the judgment is invulnerable to indirect assaults upon it." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Sousa* v. *Sousa*, 322 Conn. 757, 771, 143 A.3d 578 (2016); see also *Schoenhorn* v. *Moss*, 347 Conn. 501, 510, 298 A.3d 236 (2023) (citing "our deep-rooted public policies favoring consistency and stability of judgments, the orderly administration of justice, and the prevention of inconsistent rulings" in concluding that plaintiff's action was collateral attack on order imposed by different court in different action, which was not permissible (internal quotation marks omitted)).

As we previously have noted, our Supreme Court has determined that a final judgment is presumptively valid when collaterally attacked. *Sousa* v. *Sousa*, supra, 322 Conn. 771. Mark Murrell—who would have been the proper party to appeal from the 1994 child support judgment—did not contest his paternity or his obligation to pay child support, even once he appeared in the matter in 2012 regarding the motion for modification, and he paid toward that child support obligation until shortly before his death. The 1994 judgment, therefore, is presumptively valid. See id.

As a result, Mark Murrell's paternity had "already been adjudicated by a court of competent jurisdiction" prior to the January 1, 2022 effective date of the Connecticut Parentage Act, and, therefore, pursuant to §46b-553, the Connecticut Parentage Act does not apply in the

present case. Accordingly, contrary to Marquea Murrell's claim, Jemar Smith was not required to satisfy the legal requirements set forth in the Connecticut Parentage Act.

We, therefore, agree, albeit for different reasons, with the Superior Court's conclusion that the evidence presented should result in upholding the Probate Court's conclusion that Jemar Smith was the son of Mark Murrell. Marquea Murrell cannot prevail on her claim that the Superior Court improperly shifted the burden to her to disprove paternity. Jemar Smith had the benefit of the presumptively valid judgment of the family support magistrate in issuing the 1994 child support judgment, which Marquea Murrell was attempting to collaterally attack, and the subsequent judgments earlier noted. Marquea Murrell did not sustain her burden of overcoming that presumption. See *Sousa* v. *Sousa*, supra, 322 Conn. 771.

Accordingly, we conclude that the Superior Court's conclusion that Jemar Smith is Mark Murrell's biological son is legally sound and supported by the record. The Superior Court, therefore, properly upheld the decrees issued by the Probate Court that removed Marquea Murrell as the fiduciary of Mark Murrell's intestate estate and appointed Attorney Berry as the permanent administrator.

The judgment is affirmed.

In this opinion the other judges concurred.